# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MARTIN EDWARD ZALE,

        Defendant-Appellant.

UNPUBLISHED
March 21, 2017

No. 328001
Livingston Circuit Court
LC No. 14-022392-FC

Before: BECKERING, P.J., and O'CONNELL and BORRELLO, JJ.

PER CURIAM.

Defendant, Martin Edward Zale, appeals as of right his convictions following a jury trial of second-degree murder, MCL 750.317, intentionally discharging a firearm from a motor vehicle, MCL 750.234a, and two counts of possessing a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced him to serve concurrent terms of 25 to 50 years' imprisonment for second-degree murder and 32 months to 4 years' imprisonment for intentionally discharging a firearm from a motor vehicle, as well as two consecutive terms of two years' imprisonment each for his two counts of felony-firearm. We affirm.

## I. FACTS AND PROCEDURAL HISTORY

Zale shot the victim, Derek Flemming, during a road-rage incident. According to Amy Flemming, the victim's wife, Derek was driving on Grand River Avenue when a truck pulled up to a stop sign so quickly that she feared it would not stop. The truck pulled behind them onto Grand River Avenue. It drove close to their vehicle, and Amy thought they would be rear-ended. Derek attempted to get into the right lane to allow the truck to pass, but the truck passed them on the right, sped up, pulled directly in front of them, and then slammed on its brakes. The truck then accelerated to the speed limit and slammed on its brakes again. Derek appeared angry after the second time.

At a subsequent stop at an intersection, Derek put their vehicle into park, got out of the car, and walked toward the truck. Amy saw Derek throw his hands in the air and say, "what the ****'s your problem." She heard a popping noise and saw her husband's head go back before he fell to the ground. Everything happened quickly and she never saw her husband's hands touch or approach the truck.

-1-

According to Zale, as he drove on Grand River Avenue, his speed varied because the vehicle in front of him was driving erratically. He was concerned because it seemed that the vehicle behind him was chasing him through amber-colored lights. While stopped at an intersection, he saw the driver of the vehicle behind him begin to approach Zale's truck. The driver began hitting Zale's truck, and Zale rolled down his window and told him to stop. The man rapidly approached Zale's window, hit him in the side of the face while yelling and screaming, and then reached for the inside handle of Zale's door. Because Zale was afraid for his life, he picked up his gun and shot the man. Zale believed the shooting was justified because the man intended to inflict great harm on him.

Bus driver Sue King testified that as she was turning onto Grand River, she saw Derek walking toward a vehicle stopped in front of him. According to King, Derek appeared to be irate and was gesturing with his hands as if to say "what were you thinking." The driver's side window of the truck was up at that point. She never saw Derek touch the truck. She looked into her rear view mirror because she thought there might be "an incident," heard a gunshot, and saw Derek fall backward. At that time, she thought Derek was one to two feet from the truck and she could see daylight between it and Derek. Seven other witnesses at the intersection testified that they never saw Derek touch or reach into the truck; some emphasized how quickly everything had happened between Derek approaching the truck and the gunshot. However, Gerald Dinius testified that he saw Derek with his hand on top of the truck's rail while he was moving toward the truck, and David Clevinger testified that when he confronted Zale shortly after the incident, Zale explained that Derek had punched him in the face. Clevinger thought that the area under Zale's right eye looked puffy.

Following deliberations, the jury found Zale guilty as previously described.

## II. SUFFICIENCY OF THE EVIDENCE

Zale argues that the prosecution failed to prove beyond a reasonable doubt that he did not act in self-defense. We disagree.

We review de novo a defendant's claim that the evidence was insufficient to support his or her conviction. *People v Ericksen*, 288 Mich App 192, 195; 793 NW2d 120 (2010). We review the evidence "in a light most favorable to the prosecutor to determine whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt." *People v Robinson*, 475 Mich 1, 5; 715 NW2d 44 (2006). We must resolve any conflicts in the evidence in the prosecution's favor. *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

To establish that defendant committed second-degree murder, the prosecution was required to prove that there was "(1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse." *People v Reese*, 491 Mich 127, 143; 815 NW2d 85 (2012) (quotation marks and citations omitted). A person may use deadly force against another in self-defense if the person "honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual." MCL 780.972(1)(a). Whether a person's belief regarding the use of force is reasonable "depends on what an ordinarily prudent and intelligent person would

-2-

do on the basis of the perceptions of the actor." *People v Orlewicz*, 293 Mich App 96, 102; 809 NW2d 194 (2011). The prosecution must disprove the defendant's claim of self-defense beyond a reasonable doubt. *Reese*, 491 Mich at 155.

In this case, multiple witnesses testified that Derek did not touch the truck and that Zale shot Derek the moment after he reached the driver's side window. Other witnesses testified that the window was up, and even Zale admitted that he rolled the window down. While some witnesses testified that Derek had touched the truck or possibly hit Zale, when evidence conflicts, it is the province of the jury to weight the conflicting evidence and reach a conclusion. See *Kanaan*, 278 Mich App 619. This Court will not interfere with the trier of fact's role to determine the weight of the evidence or the credibility of the witnesses. *Id*. We conclude that when viewing the evidence in the light most favorable to the prosecution, a reasonable juror could have found beyond a reasonable doubt that Zale did not act in self-defense when he shot Derek.

## III. PROSECUTORIAL MISCONDUCT

Zale argues that the prosecution improperly impeached three defense witnesses by questioning them about arrests and convictions that did not involve theft or dishonesty. We disagree.

As an initial matter, Zale did not object to this conduct below. To preserve an issue, the appellant must challenge it before the trial court on the same grounds as he or she challenges it on appeal. *People v Kimble*, 470 Mich 305, 309; 684 NW2d 669 (2004). Because this issue is unpreserved, we will review it for plain error affecting the defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764, 597 NW2d 130 (1999). An error is plain if it is clear or obvious and it affects the defendant's substantial rights if it affected the outcome of the lower court proceedings. *Id*.

Generally, parties cannot attack or support a witness's credibility by using extrinsic evidence of specific instances of the witness's conduct. MRE 608(b). However, MRE 609 allows a party to impeach a witness's credibility by using extrinsic evidence of a prior conviction if the conviction meets certain requirements, including if the crime contained an element of theft, dishonesty, or false statement:

> For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall not be admitted unless the evidence has been elicited from the witness or established by public record during cross-examination, and
>
> > (1) the crime contained an element of dishonesty or false statement, or
> >
> > (2) the crime contained an element of theft, . . .

Three witnesses offered general character testimony about Derek's temper and how intimidating he could be when angry. Regarding the two witnesses whom the prosecution impeached with evidence of their arrests for domestic violence, neither of these arrests involved

a conviction. Accordingly, by its language, MRE 609 does not apply, and the trial court did not plainly err by admitting testimony of these arrests.

The third witness offered general character testimony about Derek. The witness testified that he was afraid of Derek during a confrontation in which Derek was angry about being overcharged on a purchase. The prosecution impeached the witness with evidence that he had been convicted of drunk and disorderly conduct, assault and battery, and attempted resisting and obstructing a police officer, using the witness's testimony to question whether the witness was truly afraid of Derek during the confrontation. This impeachment plainly violated MRE 609 because the prosecution used convictions to impeach a witness and the convictions did not involve dishonesty, false statement, or theft.

However, we conclude that this error did not affect Zale's substantial rights. The testimony of this particular witness was cumulative to the testimonies of multiple witnesses who testified that Derek had a temper, could become irate, would yell and swear, and that they were afraid of him at those times. The improper impeachment of a single witness was unlikely to affect the jury's determination that Zale did not act in self-defense when he shot Derek.

## IV.  JURY INSTRUCTIONS

Zale contends that the trial court improperly issued the wrong self-defense jury instruction. If defense counsel affirmatively approves the trial court's jury instructions on the record, defense counsel's approval extinguishes any error and waives this Court's review of the issue. *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000). Zale has waived our review of this issue because defense counsel responded affirmatively when the trial court asked whether counsel was satisfied with the instructions as given.

## V.  INEFFECTIVE ASSISTANCE OF COUNSEL

Zale next argues that his trial counsel provided ineffective assistance in a variety of ways. We disagree.

A claim of ineffective assistance of counsel presents a mixed question of fact and constitutional law. *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). We review for clear error the trial court's findings of fact and review de novo issues of constitutional law. *Id*. Because Zale did not receive a *Ginther*[1] hearing, our review is limited to mistakes apparent from the record. *People v Mack*, 265 Mich App 122, 125; 695 NW2d 342 (2005).

A criminal defendant has the fundamental right to effective assistance of counsel. US Const, Am VI; Const 1963, art 1, § 20; *United States v Cronic*, 466 US 648, 654; 104 S Ct 2039; 80 L Ed 2d 657 (1984). To prove that defense counsel was ineffective, the defendant must show that (1) defense counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that counsel's deficient performance prejudiced the

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

defendant. *Strickland v Washington*, 466 US 668, 687-688, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). See also *People v Pickens*, 446 Mich 298, 326; 521 NW2d 797 (1994). The defendant must overcome the strong presumption that defense counsel's performance constituted sound trial strategy. *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012). A defendant was prejudiced if, but for defense counsel's errors, the result of the proceeding would have been different. *Id*. at 671.

First, Zale contends that counsel should have moved for a change of venue because of pretrial publicity. A change of venue is warranted if there was extensive, inflammatory publicity such that jurors could not remain impartial after being exposed to it. *People v Cline*, 276 Mich App 634, 639; 741 NW2d 563 (2007). However, "[w]hen a juror, although having formed an opinion from media coverage, swears that he is without prejudice and can try the case impartially according to the evidence, and the trial court is satisfied that the juror will do so, the juror is competent to try the case." *Id*. (quotation marks and citation omitted).

In this case, the trial court asked each juror whether they had read anything or heard anything about the case during voir dire. The court then asked each juror who had read or heard about the case whether they could set aside any opinions they had formed and reach a conclusion based only on the evidence. Those who answered under oath that they could were seated, and those who said they could not were dismissed. Because Zale was tried only by those jurors who were competent, he cannot establish that counsel's decision not to move for a change of venue prejudiced him.

Second, Zale argues that counsel improperly agreed to the prosecutor's request to call a specific witness to testify about another witness's arrest. Counsel's decisions regarding what witnesses to call and what evidence to present are matters of trial strategy. *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008). Contrary to Zale's argument, this witness's impeachment testimony did not violate MRE 609 because it involved an arrest, not a conviction. Zale has not shown that counsel's decision fell below an objective standard of reasonableness.

Third, Zale argues that counsel was ineffective for failing to object to problems with the jury instructions. A criminal defendant is entitled to a properly instructed jury. *People v Armstrong*, 305 Mich App 230, 239; 851 NW2d 856 (2014). Jury instructions must include "all the elements of the charged offenses and any material issues, defenses, and theories that are supported by the evidence." *People v McKinney*, 258 Mich App 157, 162-163; 670 NW2d 254 (2003). Whether to request a particular jury instruction is a matter of trial strategy. See *People v Matuszak*, 263 Mich App 42, 59-60; 687 NW2d 342 (2004).

Zale argues that trial counsel should have requested that the trial court instruct the jury with M Crim JI 7.16a, which provides in relevant part:

(1) If you find both that—

(a) the deceased was breaking and entering a dwelling or business, or committing home invasion, or had broke and entered or committed home invasion and was still present in the dwelling or business, or is unlawfully attempting to remove a person from a dwelling, business, or vehicle against the person's will,

-5-

and

      (b)   the defendant honestly and reasonably believed the deceased was engaged in any of the conduct just described

—you must presume that the defendant had an honest and reasonable belief that imminent [death / great bodily harm / sexual assault] would occur.

* * *

      (c)  the defendant was engaged in the commission of a crime or using the dwelling, business premises, or vehicle to further the commission of a crime . . . .

Contrary to Zale's assertion, this instruction does not cover a situation in which a person is breaking and entering a vehicle—it only covers a situation in which a person is "unlawfully attempting to remove a person from a . . . vehicle against the person's will . . . ." Zale testified that Derek punched into his vehicle and was attempting to open the interior door handle. Zale presented no evidence that Derek was attempting to *remove him* from his vehicle. Accordingly, defense counsel acted reasonably by not requesting this instruction because it did not apply to the facts of this case.

Zale also argues that trial counsel should have challenged the trial court's reading of M Crim JI 7.18, which states that a person who started an assault on someone else with deadly force or a dangerous or deadly weapon cannot claim to have acted in self-defense unless he or she genuinely stopped the fight or assault and clearly let the other person know that he or she wanted to make peace. The trial court altered this instruction by removing the phrase "with deadly force or a dangerous weapon."

We conclude that Zale has not established that but for this alteration, the results of his proceeding would have been different. A vehicle may be a dangerous or deadly weapon when it is used to accomplish an assault. *People v Goolsby*, 284 Mich 375, 378; 279 NW 867 (1938). Also see *People v Sheets*, 138 Mich App 794, 799; 360 NW2d 301 (1984) (holding that assault with a dangerous weapon applied when the defendant drove the vehicle at the victims and then applied the brakes with the intent of scaring them). The evidence in this case established that Zale cut Derek off in traffic and drove recklessly in front of him by braking unpredictably, as if to instigate an accident. While the trial court altered the language of the instruction, the instruction remained applicable to the facts of the case, and the instruction as read accurately represented the state of the law to the jury. We conclude that trial counsel did not act unreasonably by failing to object to the instruction.

Zale next contends that trial counsel was ineffective for failing to call an expert witness on self-defense. However, the determination of whether a person believed that deadly force was necessary to defend him- or herself must be made on the basis of "what an ordinarily prudent and intelligent person would do on the basis of the perceptions of the actor." *Orlewicz*, 293 Mich App at 102. The determination of whether an ordinary person would have believed that deadly force was necessary did not require scientific, technical, or other specialized knowledge. Accordingly, we are not convinced that trial counsel's decision not to employ an expert witness was unreasonable or affected the outcome of Zale's case.

Finally, Zale argues that counsel was ineffective for agreeing to strike the testimony of witnesses to previous road-rage incidents because those witnesses could not identify Derek as the person involved. Again, defense counsel's decisions to call and investigate witnesses are matters of trial strategy. *Horn*, 279 Mich App at 39. We reject appellate counsel's suggestion that trial counsel should have instead "prepared" the witness to identify Derek as the perpetrator when there was no indication in the record that the witnesses were sure of that fact. We instead conclude that trial counsel's decision to strike those witnesses who could not affirmatively identify Derek as the person with whom they were involved in road-rage incidents was reasonable.

We affirm.

/s/ Peter D. O'Connell